**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| YAMIL ALBERTO ORTIZ PAGAN;<br>GRAZIELLE MARIE RUIZ DE PORRAS<br><br>Plaintiffs<br><br>v.<br><br>PLANET HOME LENDING LLC.;<br>LUNA RESIDENTIAL III LLC.;<br>FIRSTBANK PUERTO RICO;<br>EXPERIAN INFORMATION SOLUTIONS INC.;<br>EQUIFAX INFORMATION SERVICES, LLC.<br><br>Defendants | Civil No. 22-cv-1447<br><br><br>Re: Willful Violation of the Discharge Injunction; Violation of the Fair Debt Consumer Protection Act; Violation of the Fair Credit Reporting Act; Actual and Punitive Damages |

## COMPLAINT

**COMES NOW,** Plaintiffs, **Yamil Alberto Oritz Pagan and Grazielle Marie Ruiz de Porras.** through the undersigned counsel, and before this Honorable Court respectfully **STATE**, **ALLEGE** and **PRAY** as follows:

## I.    INTRODUCTION

This action seeks redress for the unlawful and deceptive practices committed by the Defendant in connection with its efforts to collect a debt, previously discharged in bankruptcy, against Plaintiffs. Defendants, individually and/or collectively, engaged in unlawful and deceptive collection practices in violation of the Fair Debt Collection Practice Act ("FDCPA"), the Fair Credit Reporting Act ("FCRA") and the Discharge Injunction.

This action is filed to enforce the Plaintiffs' right to be freed from unlawful and/or deceptive collection practices. Furthermore, this action seeks that Defendants stop their unlawful collection efforts against the Plaintiffs.

The Plaintiffs request declaratory and injunctive relief, as well as monetary, and punitive damages based on violations of 15 U.S.C. §1692; 15 U.S.C. §1681; 11 U.S.C. § 524 and 11 U.S.C. § 105.

## II.    JURISDICTION AND VENUE

1.    Jurisdiction is invoked under the provision 28 U.S.C. §1331, 15 U.S.C. §1692(k)(d) and 15 U.S.C. §1681 and 28 U.S.C. §1334.

2.    Venue is proper in this District because all the events and omissions giving rise to the claims asserted in the Complaint occurred within this judicial district. In addition, Defendants do business in this District.

## III.    THE PARTIES

3.    Plaintiffs, **Yamil Alberto Ortiz Pagan and Grazielle Marie Ruiz de Porras** were Debtors in a bankruptcy case filed in the United States Bankruptcy Court for the District of Puerto Rico.[1]   The allegations herein, related to real property – and its associated debt – located at Condominio Les Jardins, Trujillo Alto, PR.   The Plaintiffs are individuals, accordingly, have standing to sue and be sued and appear as "**Plaintiffs**".   Plaintiffs are "consumers" as such term is defined by the FDCPA and/or the FRA.

4.    Defendant, **LUNA RESIDENTIAL III, LLC.** (hereinafter referred as "**LUNA**" or "**Defendant**") is a Limited Liability Company incorporated under the laws of the Commonwealth of Puerto Rico with a principal office address of:  Citi Tower, 252 Ponce De Leon Ave., Floor 20, San Juan, PR 00918.  Defendant is in the business of collecting consumer debts.  That is, one of the principal purposes of Defendant's business is the acquisition of defaulted consumer debts and

---

[1] See, In re Grazielle Marie Ruiz de Porras and Yamil Alberto Ortiz Pagan, Case #16-07570 (ESL), Sept. 22, 2016 (Bankr. D.P.R. 2016).

the collection of those debts. The business of debt collection is Defendant's only business; in other words, but for its debt collection business Defendant would cease to exist. Defendant does not originate any debt of its own. Defendant's business is conducted by and through the use of interstate communication such as US Mail, electronic communications (e-mails, electronic payments), and telephone communications. As such, Defendant is a debt collector as such term is defined in 15 U.S.C. §1692a(6).

5.    Defendant, **Planet Home Lending, LLC.** (hereinafter referred to as "Planet" or "Defendant") is a limited liability corporation, with standing to sue and be sued, incorporated in the state of Delaware with the principal address of: 321 Research Parkway Suite 303 Meriden, Connecticut 06450, US. Planet is in the business of collecting consumer debts. That is, Planet is a mortgage servicing company who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Additionally, Planet's business is conducted by and through the uses of interstate communication such as US Mail, electronic communications (e-mails, electronic payments), and telephone communications. As such, Planet is a debt collector as such term is defined in 15 U.S.C. §1692a(6). Planet committed and/or participated in acts against Plaintiffs in violation of, amongst others, the FDCPA, FCRA and the Discharge Injunction under Section 524 of the Bankruptcy Code; therefore, Planet is responsible for the acts and damages discussed in this Complaint.

6.    Defendant, **Equifax Information Services LLC.** (hereinafter referred to as "Equifax"), is one of the country's three largest consumer credit reporting agencies, is a Georgia corporation domiciled in Georgia. Its headquarters and principal place of business is located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax is a consumer reporting agency subject to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

7.    Defendant, **Experian Information Solutions, Inc.** (hereinafter referred to as "Experian") is a multinational corporation with its Unites States offices located at 475 Anton Blvd. Costa Mesa, CA 92626. Equifax is a consumer reporting agency subject to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA").

8.    Defendant, **Firstbank Puerto Rico** (hereinafter referred to as "Firstbank") is a banking institution with standing to sue and be sued. Firstbank is a creditor of this bankruptcy estate, duly notified pursuant to applicable bankruptcy law of all proceedings in this case. Defendant committed and/or participated in acts against Debtors-Plaintiffs in violation of the Discharge Order provisions of the Bankruptcy Code and therefore is responsible for the acts and damages discussed in this complaint.

9.    Defendants, **Insurance Companies ABC**, are the insurance companies of the Defendant in this adversary proceeding who are liable for the acts against the Plaintiffs and are therefore responsible for the damages and acts alleged in this complaint.

10.    Defendants, **John Doe and Jane Doe,** are fictitious names for unknown persons who participated in the act and omissions against Plaintiffs and/or who are successors of Defendants, all responsible for the damages suffered by the Plaintiffs.

## IV.    <u>THE FACTS</u>

11.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

12.    On September 22, 2016, Plaintiffs filed a voluntary petition under Chapter 7 of the Bankruptcy Code. *See,* Dk. #1 on the Bankruptcy case No. 16-07570-ESL7 (hereinafter referred to as the "Bankruptcy Case").

13.    Firstbank was notified of Plaintiffs' Bankruptcy petition, since it was included in Schedule D of the Voluntary Petition, as a Creditor Holding a Secured Claim (hereinafter referred to as the "Bankruptcy Debt").  *See*, Dk. #1 on Bankruptcy Case.

14.    Firstbank received actual notice of Plaintiffs' Bankruptcy petition.  *See*, Dk. #5, Certificate of Service, on the Bankruptcy Case, and see also, Proof of Claim #3.

15.    First, on September 25, 2016, the Clerk filed a Certificate of Notice which evidences that Firstbank was duly notified of the filing of the Voluntary Petition.  *See,* Dk. # 5 Certificate of Service on the Bankruptcy Case.

16.    Second, on October 14, 2016, Firstbank filed Proof of Claim #3 confirming, in fact, actual and constructive knowledge of Debtor's Voluntary Petition.  *See*, Proof of Claim #3 on the Bankruptcy Case.

17.    Proof of Claim #3 sought two distinct claims against Plaintiffs.  See, Proof of Claim #3, the Bankruptcy Case.

18.    First, FirstBank alleged that Plaintiffs, in their personal capacity, owed FirstBank $158,596.84 ("FirstBank's In-Personam Claim").  *See*, Proof of Claim #3.

19.    Second, FirstBank alleged to hold a mortgage lien (i.e., a security interest) over certain real property owned by the Plaintiff's ("FirstBank's In-Rem Claim").  *See*, Proof of Claim #3.

20.    During the pendency of the Bankruptcy Case, Firstbank did not file any proceedings to declare FirstBank's In Personam claim "non dischargeable" pursuant to 11 U.S.C. § 523 et seq.

21.    After all due procedural events, on December 20, 2016, this Honorable Court entered the Discharge Order in the Bankruptcy Case (hereinafter referred as "Discharge Order").  *See,* Dk. #31 on the Bankruptcy Case.

22.    By operation of law, the Discharge Order activated the Discharge Injunction under Section 524 of the Bankruptcy Code and conclusively discharged the Plaintiffs, amongst other debts, from FirstBank's In Personam Claim.

23.    On December 22, 2016, the Clerk of the Bankruptcy Court filed a Certificate of Notice (the "Certificate of Service as to Discharge Order"). In the Certificate of Service as to Discharge Order Mr. Joseph Speetjens declared, under penalty of perjury, that a copy of the Order of Discharge was mailed to Firstbank. *See,* Dk. #33 on the Bankruptcy Case.

24.    Upon Discharge, Firstbank's employee(s), agent(s), representative(s), legal or otherwise, and/or contractor(s) were required pursuant to 11 U.S.C. § 727 to stop any collection attempt on the FirstBank In-Personam Claim against the Plaintiffs.

25.    Even after the Discharge Order issued by this Honorable Court, and notwithstanding having actual and constructive knowledge of the Discharge Order and that the FirstBank In Personam Claim had been discharged in the Bankruptcy Case, Firstbank continued with collection efforts, as to the FirstBank In Personam Claim, against the Plaintiffs by and through the selling of the FirstBank In Personam Claim, discharged in the Bankruptcy Case, to Defendant Luna.

26.    Sometime prior to October 1, 2021, Plaintiffs had commenced shopping for a new home for them and their family.  Amongst others, Plaintiffs were attracted by: (a) the historically low interest rates that permeated the markets during the later part of 2021 and the fact that real estate seemed like an extremely attractive investment in the Florida region in the second half of calendar year 2021.

27.     In preparation for the purchase of their new home, and to maintain the integrity of the information in their credit files, Plaintiffs had subscribed to a credit monitoring system which notifies them immediately of any changes in their credit files.

28.     Upon information and believe, on or about October 1, 2021 FirstBank sold to Defendant Luna its two alleged claims against the Plaintiffs; *to wit*, its alleged In Personam Claim as well as its alleged In Rem Claim.

29.     On or about October 1, 2021 Defendant Luna retained Defendant Planet to act as its debt collector with respect to at least the In Personam Claim.

30.     On October 14, 2021, Planet telephoned Plaintiff Ruiz DePorras; the call was not connected, and Planet left a voicemail for Plaintiff.

31.     On the same day – October 14, 2021 - Plaintiff Ruiz DePorra proceeded to return the call from Planet; Planet's employee informed Plaintiff Ruiz DePorra that the Firstbank's In Personam Claim was transferred to Planet on October 1, 2022 and that the amounts were due and owing.

32.     Plaintiff Ruiz DePorra was then transferred to another employee (Susan Rosa); Plaintiff Ruiz DePorra notified Planet employee Susan Rosa that the FirstBank In Personam Claim was discharged by their Bankruptcy Case.

33.     Once Planet employee Susan Rosa was informed of the Bankruptcy Case, Planet's employee Susan Rosa told Plaintiffs that such information was noted and referred to the Foreclosure Department.

34.     On or around December 9, 2021, Plaintiffs received a notification from their credit monitoring provider; the notification related to Defendant Experian.  The notification informed

Plaintiffs that Defendant Planet was now reporting the allegedly recently acquired FirstBank In Personam Claim to Experian.

35.     As a result of Planet's reporting of the FirstBank In Personam Claim – previously discharged in the Bankruptcy Case – Defendant Experian informed that Plaintiff Ortiz' credit score suffered a reduction of 47 point, and that Plaintiff Ruiz DePorra credit score suffered a reduction of 54 points.

36.     On the same day, Plaintiff proceeded to review their respective credit reports with Defendant Experian.  Experian was reporting the FirstBank In Personam Claim, allegedly acquired by Planet, with a total outstanding balance of over $207,000.00 and a past due balance of over $60,000.00.

37.     On the same day, December 9, 2021, Plaintiff Ruiz DePorras and Plaintiff Ortiz prepared and sent a dispute concerning the accuracy of the information being reported by Planet to Defendant Experian for Experian to investigate the accuracy of the information being reported by Defendant Planet.

38.     The next day, December 10, 2021, Plaintiffs received a notification from their credit monitoring provider; the notification related to Defendant Equifax.  The notification informed Plaintiffs that Planet was now reporting the allegedly recently acquired FirstBank In Personam Claim to Equifax.

39.     As a result of Planet's reporting of the FirstBank In Personam Claim – previously discharged in the Bankruptcy Case – Defendant Equifax informed that Plaintiff Ortiz' credit score suffered a reduction of 29 point, and that Plaintiff Ruiz DePorra credit score suffered a reduction of 152 points.

40.    On the same day, Plaintiff proceeded to review their respective credit reports with Equifax.  Equifax was reporting the FirstBank In Personam Claim, allegedly acquired by Planet, with a total outstanding balance of over $207,000.00 and a past due balance of over $60,000.00.

41.    On December 10, 2021 Plaintiff Ruiz DePorras disputed the accuracy of the Planet debt with Defendant Equifax.  Defendant Ortiz prepared and sent a dispute concerning the accuracy of the information being reported by Planet to Defendant Equifax to investigate the accuracy of the information being reported by Defendant Planet.

42.    On December 11, 2021, in turn, Plaintiff Ortiz disputed the accuracy of the Planet debt with Equifax.  Ortiz prepared and sent a dispute concerning the accuracy of the information being reported by Planet for Equifax to investigate the accuracy of the information being reported by Defendant Planet.

43.    Between December 30, 2021, and January 6, 2022, Plaintiffs received notifications from Experian and Equifax which maintained their position as to the status of the debt and stated that the disputed information regarding the Bankruptcy Debt was in fact correct.

44.    Plaintiffs then proceeded to submit new disputes directly with Experian and Equifax regarding the debt being reported by Planet (i.e., the FirstBank In Personam Claim).  This time, Plaintiffs also sent both Experian and Equifax evidence of the Bankruptcy Discharge Order[2].

45.    On or around January 1, 2022, Plaintiffs received another notification for Experian in which it continued to allege that the debt being reported by Planet, and stated in Plaintiff's credit reports, was correct and accurate.

46.    Similarly, Equifax also refused to correct the debt being reported by Planet.

---

[2] Plaintiffs had also disputed the accuracy of the debt with TransUnion.  TransUnion, however, corrected the credit reporting of the incorrect debt within days.

47.     On February 1, 2022, Planet called Plaintiffs, again, to collect on the FirstBank In Personam Claim which had been discharged in the Bankruptcy Case.

48.     Between February 1 2022 and February 26, 2022 Plaintiffs placed at least four telephone calls to Defendants Equifax and Defendant Experian in the hopes of getting them to correct the misinformation being reported by Defendant Planet.

49.     Defendant Experian and Defendant Equifax refused to correct the information.

50.     On March 16, 2022 Planet called Plaintiffs, again, to collect on the FirstBank In Personam Claim which had been discharged in the Bankruptcy Case.

51.     Previously, on/or about December 26, 2021, Plaintiffs conferenced with M/I Homes in Orlando, Florida regarding their intent qualify for the home they were looking to purchase.  Because of the information being reported by Defendant Planet, which Defendant Equifax and Defendant Experian negligently refused to correct, Plaintiffs were not able to proceed with the purchase of the home.

52.     The information reported to the credit reporting agencies by Defendant Planet, which Defendant Equifax and Defendant Experian negligently refused to correct, resulted in the Plaintiffs being deprived the opportunity to purchase the home they were interested in buying.

53.     In fact, as of today's date, Plaintiffs' credit reports from Experian and Equifax continue to report the disputed Bankruptcy Debt as if it is still enforceable personally against the Plaintiffs.

### V.      COUNT I – PLANET AND LUNA
### VIOLATIONS OF *15 U.S.C. § 1692e(2), (10)*

54. Plaintiffs re-allege each and every previous allegation as if fully established herein.

55. Section 1692e, in its pertinent part, states:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:
…
(2) The false representation of—
   (A) **the character, amount, or legal status of any debt**…
(3) …………………………………………………………...;
(4) ………………………………………….………………;
(5) …………………………………………………………;
(6) …………………………….…………………………...;
(7) …………………………………………………………;
(8) …………………………….…………………………...;
(9) …………………………….…………………………...;
(10) The **<u>use of any false representation</u>** or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

56.     Under Section 1692e, a debt collector may not falsely represent "the character, amount, or legal status of any debt".

57.     Section 1692e also prohibits the "use [of] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer". 15 U.S.C. §§ 1692e(10).

58.     "The FDCPA is 'a strict liability statue' and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional."  *See*, <u>Vangorden v. Second Round, Ltd. P'ship</u>, 897 F.3d 433, 437-38(2d Cir. 2018) (citing <u>Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP</u>, 875 F.3d 128, 134 (2d Cir. 2017)).  "The strict liability standard applies to § 1692e claims."  *See*, <u>Wahl v. Midland Credit Mgmt., Inc.</u>, 556 F.3d 643, 646 (7th Cir. 2009).

59.     Therefore, a "[d]ebt collectors may not make false claims, period."  *See*, <u>Randolph v. IMBS, Inc.</u>, 368 F.3d 726, 730 (7th Cir. 2004); *see also*, <u>Valle v. Westhill Exch., LLC</u>, GJH-19-2304 (D. Md. Mar. 24, 2021) ("[A] debt collector may violate §1692e even if it unintentionally

makes a false statement."); <u>Turner v. J.V.D.B. & Assocs., Inc.</u>, 330 F.3d 991, 995 (7th Cir. 2003)

("[U]nder §1692e ignorance is no excuse."); <u>Russell v. Equifax A.R.S.</u>, 74 F.3d 30, 33 (2d Cir.

1996).

60.     With respect to the allegations in Count I, Planet acted as the agent of, on behalf of,

with the consent of, and under the authority of Luna.  Accordingly, all allegations asserted herein

as to Defendant Plan, are imputed upon Defendant Luna.

61.     For purposes of Count I, Plaintiff will refer to Defendant Planet and Defendant

Luna as one and the same.

62.     Planet's false, misleading, and deceptive representations in Plaintiff's credit

reports, which alleged that FirstBank's In Personam claim was due and owing, violated 15 U.S.C.

§ 1692e(2)(a)(10).

63.     Planet's false, misleading, and deceptive representations to Plaintiffs, in multiple

phone calls made to Plaintiff, which alleged that FirstBank's In Personam Claim was due and

owing, violated 15 U.S.C. § 1692e(2)(a)(10).

64.     Planet falsely represented that the FirstBank In Personam Claim was due and owing

for over $207,000.00 with a past due balance of over $60,000.00 to both, credit reporting agencies

and the Plaintiffs.

65.     This representation was false because the Plaintiffs had sought and obtained a

bankruptcy discharged, as a result of such discharge the Plaintiff's In Personam obligation to

FirstBank was $0.00.  Accordingly, $0.00 were due, $0.00 were past due, and the account was not

open; rather, it had been discharged in bankruptcy.

66.     Planet violated Section 1692e(2)(A) because it incorporated a false representation

and a mischaracterization of the nature and legal status of the FirstBank In Personam Claim by

furnishing information about the FirstBank In Personam Claim to credit reporting agencies and by attempting to collect from Plaintiffs a debt that was discharged in the Bankruptcy Case; thus, was neither due nor owing nor demandable.

67.    Planet violated Section 1692e(10) by using false representations and/or deceptive means to collect, or attempt to collect, the Consumer Debt. Specifically, Defendant falsely represented and furnished to the credit reporting agencies that Plaintiffs owed over $207,000.00, were past due by over $60,000.00 as a way to inflict damage to the Plaintiffs credit report as means to pressure Plaintiffs to make payment on a debt which was neither due nor owing.

68.    The means to collect used by Planet – reporting false information to credit reporting agencies which resulted in a substantial reduction in Plaintiffs' credit score - was deceptive means to collect or attempt to collect on the discharged debt.

69.    The result of Planet extreme and outrageous conduct, as well as unfair and deceptive actions, lead Plaintiffs to mistakenly believe that they needed to pay the pre-petition debt in question – which was not owed – immediately.

70.    As a result of Planet extreme and outrageous conduct, Plaintiffs suffered tangible and intangible injuries.

71.    Amongst Plaintiffs' tangible injuries, Plaintiffs: (a) spent time and money to engage counsel and to review their respective credit reports; (b) spent time and money disputing the alleged debt with the credit reporting agencies; (c) opportunity costs related to time missed from work due to their reduced and impacted credits; (d) severe emotional harm that resulted from Plaintiffs' believe that notwithstanding their investment in counsel and bankruptcy filing, they were still subject to the impending financial and legal harm; as well as (e) as physical ailments like headaches, and others resulting from the allegations in the Demand Letter.

72.     Additionally, Plaintiffs suffered intangible injuries by and through the denial of being able to purchase the home they were interested as a result of the significant reduction in their credit scores.

73.     In addition, the collection phone calls, in violation of the FDCPA, exposed Plaintiffs to the risk of paying a debt which they did not owe; precisely, the type of harm Congress intended to prevent via the FDCPA.

74.     As a result of Planet's conduct, Plaintiffs are entitled to an award of statutory damages pursuant to 15 U.S.C. §1692k.

75.     As a result of Planet's conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to 15 U.S.C. §1692k.

## VI.     COUNT II – PLANET AND LUNA VIOLATIONS OF *15 U.S.C. § 1692g*

76.     Plaintiff re-alleges each and every previous allegation as if fully established herein.

77.     With respect to the allegations in Count II, Planet acted as the agent of, on behalf of, with the consent of, and under the authority of Luna.  Accordingly, all allegations asserted herein as to Defendant Plan, are imputed upon Defendant Luna.

78.     For purposes of Count II, Plaintiff will refer to Defendant Planet and Defendant Luna as one and the same.

79.     Section 1692g expressly requires all debt collectors to communicate certain information to every consumer.  Pursuant to *15 U.S.C §1692g(a)* the Defendant must provide Plaintiff, amongst others, with the following information:

(a)  Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in

14

the initial communication or the consumer has paid the debt, send the consumer a written notice containing-

(2) The name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, **is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification** or judgment will be mailed to the consumers by the debt collector;

*See, 15 U.S.C §1692g(a)* (Emphasis added).

80.     This Section 1692g(a) language, "commonly referred to as a 'validation notice,' gives the consumer the information necessary to challenge the debt allegedly owed before making payment." *See*, Russell v. Equifax A.R.S., 74 F.3d 30, 32-33 (2d Cir. 1996).

81.     It is settled that the "[Seventh] and other circuits have long interpreted *§1692g* to require that the mandatory disclosures be made so that they would be clearly understood by unsophisticated debtors."  *See*, Steffek v. Client Servs., Inc. 948 F.3d 761 (7th Cir. 2020).

82.     Accordingly, "[i]t is not enough for a debt collection agency simply to include the property debt validation notice in a mailing to a consumer [rather] Congress intended that such notice be clearly conveyed."  *See*, Graziano v. Harrison, 950 F.2d 107, 111 (3rd Cir. 1991).

83.     Pursuant to the mandates of 1692g(a)(2) of the FDCPA, Defendant's Initial Communication is obligated to clearly convey to Plaintiff "[t]he name of the creditor to whom the debt is owed."

84.     Pursuant to the mandates of 1692g(a)(3) of the FDCPA, Defendant's Initial Communication was obligated to clearly convey to Plaintiff that Plaintiff had the right to dispute

the validity of the debt during the period commencing on the date of receipt of the Initial Communication and ending on the 30th day thereafter.

85.    Moreover, if the Plaintiffs disputed the debt, in accordance with Section 1692g(a)(3), Plaintiff was required to, amongst others: (a) stop all collection activities, (b) inform the credit reporting agencies of the Plaintiffs dispute, and (c) comply with the mandates of Section 1692g(a)(4).

86.    The information required under Section 1692g must be conveyed in a manner which is neither confusing nor contradictory. *See*, Bryan v. Credit Control, L.L.C., 954 F.3d 576 (2d Cir. 2020)("Even if debt collector conveys the required information, the collector nonetheless violates Section 1692g if it conveys that information in a confusing or contradictory fashion as to cloud the required message with uncertainty.").

87.    Pursuant to the mandates of 1692g(a)(4) of the FDCPA, Defendant's Initial Communication was obligated to clearly convey to Plaintiffs that the period to dispute the debt, under 1692g(a)(4), expired on the 30th the day after receipt of the Initial Communication.

88.    Defendant's Initial Communication with Plaintiff was the October 14, 2021 phone call.

89.    Defendant's Initial Communication, failed to clearly convey to Plaintiff – as required by 1692g(a)(2) of the FDCPA, "[t]he name of the creditor to whom the debt is owed."

90.    Defendant's Initial Communication failed to clearly convey to Plaintiff – as required by the 1692g(a)(3) of the FDCPA – that Plaintiff had the right to dispute the validity of the debt during the period commencing on the date of receipt of the Initial Communication and ending on the 30th day thereafter.

91.     Defendant's Initial Communication failed to clearly convey to Plaintiffs, as required by Section 1692g(a)(4), that the period to dispute extended until the 30th day, after receipt, of the Initial Communication.

92.     Moreover, after the Plaintiffs disputed the debt on October 14, 2021, Defendant Planet failed to: (a) stop collection activity, (b) notify the credit reporting agencies that the debt was disputed, or (c) furnished Plaintiffs with evidence of the underlying debt and/or information as to the creditor on the account.

93.     The Initial Communication violated 15 U.S.C. §§§ 1692g(a)(2); 1692g(a)(3); and 1692g(a)(4), respectively.

94.     Defendant Planet's unfair and deceptive actions, deprived Plaintiffs of the understanding that they could place and cease and desist on all collection activity by simply disputing the debt with Defendants.

95.     The result of Defendant's conduct, as well as unfair and deceptive actions, lead Plaintiff to engage counsel, with the related costs and expenses of such engagement, simply to review the matter and understand why – despite their bankruptcy – they were now the object of collection activity by Defendants.

96.     As a result of Defendant's extreme and outrageous conduct, Plaintiff suffered tangible and intangible injuries.

97.     Amongst Defendant's tangible injuries: (a) Plaintiff suffered severe emotional harm that resulted from Plaintiff's believe that he would be subject to an impending legal action unless they invested in counsel to launch an action against Defendants; (b) Plaintiffs suffered the economic harm that resulted from seeing the credit history tarnished, notwithstanding that they disputed the debt with Defendant Planet on October 14, 2021, and (c) Plaintiffs also suffered the

economic harm of the cost of time and money invested researching how to avoid the impending legal and economic consequences suggested by the collection activity in the Initial Communication.

98.    Additionally, Plaintiff suffered intangible injuries.  Amongst others, the confusion and contradiction created by the collection activity in the Initial Communication, without the corresponding disclosures mandated by law, exposed Plaintiffs to the risk of having to pay a debt without having the opportunity to disputes the same; precisely, the type of harm Congress intended to prevent via the FDCPA.

99.    As a result of Defendant's conduct, Plaintiff is entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k*.

100.    As a result of Defendant's conduct, Plaintiff is entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k*.

## VII.    COUNT III -  EQUIFAX AND EXPERIAN'S VIOLATIONS OF 15 U.S.C. § 1681i(a)

101.    The First Circuit Court has stated that "[I]f a consumer disputes the accuracy or completeness of any item contained in his or her consumer report, 15 U.S.C. § 1681i(a) requires consumer reporting agencies to 'conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate.'" *See*, Deandrade v. Trans Union LLC, 523 F.3d 61 (1st Cir. 2008).

102.    Specifically, 15 U.S.C. § 1681i(a) states, in relevant part:

(a) Reinvestigations of disputed information

    (1) Reinvestigation required. —

        (A) In general. — Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the

consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, **conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate** and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

…

(5) Treatment of Inaccurate Or Unverifiable Information

**(A)** In general

If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—

**(i)** promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

**(ii)** promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

103.    The information with respect to the FirstBank In Personam Claim contained in the credit files of both, Defendant Equifax and Defendant Experian, was inaccurate.

104.    The FirstBank In Personam Claim (i.e., the promissory note which underlied the original FirstBank claim now allegedly held by Planet) was discharged in the Plaintiff's Bankruptcy Case.  Accordingly, the information in the credit files of Defendant Equifax and/or Defendant Experian – as to this debt – should have reflected either an amount owing of $0.00 or reflected as "Discharged in Bankruptcy."

105.    To the contrary, the credit files of both Defendants – Defendant Equifax and Defendant Experian – reflected an amount due and owing of over $207,000.00, more than $60,000.00 past due, and more than 180 days past due, with a monthly payment due of over

$1,700.00.  This information, contained in the credit files of Defendant Equifax and Defendant Experian was inaccurate.

106.    Pursuant to 15 U.S.C. § 1681i(a) Plaintiffs disputed the information, with Equifax and Experian, on at least two occasions.  Specifically, Plaintiffs submitted written disputes that alleged that the information in their credit files, as to the FirstBank In Personam Claim, was inaccurate and requested that it be deleted or corrected.

107.    In the first dispute, Plaintiff stated the reasons in their dispute why the information in their respective credit files was inaccurate.  In the second dispute, the Plaintiffs sent - both Experian and Equifax – supporting documentation (i.e., a copy of the relevant Discharge Order) which evidenced that the information in their respective credit files was inaccurate.

108.    The Discharge Order confirmed that the FirstBank In Personam Claim had been discharged in the Bankruptcy Case.

109.    Equifax and Experian were required to review all relevant information provided by the consumer, including information that the FirstBank In Personam Claim was discharged by the Order of Discharge in the Bankruptcy Case, pursuant to 15 U.S.C. § 1681i(a).

110.    Equifax and Experian failed to conduct a reasonable investigation pursuant to 15 U.S.C. § 1681i(a).

111.    Equifax and Experian failed to conduct a reasonable investigation because a reasonable investigation required that Defendant review and consider all available information, including publicly available information.  If publicly available information would have been considered, Defendants would have confirmed that the FirstBank In Personam Claim had been discharged in the bankruptcy case because bankruptcy information is publicly available in as much as it related to a bankruptcy case which is public information.

112.    Equifax and Experian failed to conduct a reasonable investigation because a reasonable investigation required that Defendant review and consider all available information, including information submitted by Plaintiffs.  If the information submitted by Plaintiffs to Defendants – which included documents from their bankruptcy case (copy of schedules, copies of listing of creditors and debts, and copy of the Discharge Order) would have been considered, Defendants would have confirmed that the FirstBank In Personam Claim had been discharged, because Plaintiffs sent both – Defendant Equifax and Defendant Experian – a copy of the Discharge Order of the Bankruptcy Case.

113.    Equifax and Experian failed to conduct a reasonable investigation because a reasonable investigation required that Defendant review and consider all available information, including information already in credit files of Plaintiffs with Defendants.  In the credit files of Plaintiffs, maintained by each respective Defendant, there was and is information which confirms that the FirstBank In Personam Claim had been discharged, because both – Defendant Equifax and Defendant Experian – were already reporting the Plaintiffs Bankruptcy Case in credit reports issued to third parties.

114.    Neither Defendant Equifax nor Defendant Experian relied considered publicly available information, nor supporting information submitted by Plaintiff, nor the information already in their position via the credit files of Plaintiffs.  Rather, Defendants merely rested on the fact that the furnisher – Planet – confirmed the inaccurate information.

115.    Relying solely on the confirmation of information by a furnisher, without giving consideration to supporting documents from the consumer, publicly available information and/or information already in the credit files of the consumer, is not a reasonable investigation; accordingly, Defendants Equifax and Experian violated Section 1681i(a) of the FRA.

116.    The fact that a reasonable investigation would have allowed Equifax and Experian to confirm that the FirstBank In Personam Claim had been discharged, thus, should not be reported is confirmed by the fact that TransUnion was also served with an identical credit dispute and the Discharge information, within days, TransUnion corrected its credit files.

117.    As a direct and proximate result of Equifax and Experian's willful violation of the FCRA, Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Equifax and Experian.

118.    Alternatively, as a direct and proximate result of Planet's negligent noncompliance of the FCRA, Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Equifax and Experian.

### VIII.    COUNT IV- PLANET - ACTION FOR VIOLATIONS OF 15 U.S.C. § 1681s-2(b)

119.    Plaintiff re-alleges each and every previous allegation as if fully established herein.

120.    Section 1681s2(b)(1)(A), in its pertinent part, states:

(b) Duties of furnishers of information upon notice of dispute

(1) In general. After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall—
(A) conduct an investigation with respect to the disputed information;

(B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;

(C) report the results of the investigation to the consumer reporting agency;

(D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly—
(i) modify that item of information;
(ii) delete that item of information; or
(iii) permanently block the reporting of that item of information.

121.    The FCRA prohibits furnishers from reporting incorrect or inaccurate information to consumer reporting agencies where the furnisher knows or has a reasonable cause to believe the information being reported is inaccurate.

122.    Planet, a furnisher of information, reported and continues to report incorrect and inaccurate information about Plaintiffs – a consumer – to Experian and Equifax.  This, while Planet knows or has a reasonable cause to believe that the information it is reporting about the Plaintiffs is incorrect and inaccurate.

123.    Plaintiffs disputed the credit information being furnished by Planet relating to Plaintiffs and the Bankruptcy Debt pursuant to 15 U.S.C. § 1681i(a)(2) by notifying the credit reporting agencies of the incorrect and inaccurate credit information furnished by Planet to the credit agencies.

124.    In addition, Plaintiffs submitted all relevant information (i.e., information which confirmed that the account in question was discharged in the Bankruptcy Case) directly to Planet.

125.    Upon information and believe, Defendant Equifax and Defendant Experian submitted all relevant information submitted by Plaintiffs to the CRA's to Planet.

126.    Planet was required to conduct a reasonable investigation into the information relating to the FirstBank In Personam Claim being reported on Plaintiffs' consumer report pursuant to 15 U.SC. §1681s-2(b)(1)(A).

127.    Planet was required to review all relevant information provided by the consumer, including information that the FirstBank In Personam Claim was discharged in by the Order of Discharge in the Bankruptcy Case, pursuant to 15 U.SC. § 1681s-2(b)(1)(B).

128.    Because the information being furnished, that the FirstBank In Personam Claim was still due and owing, was inaccurate information, Planet was required to modify the information being reported to the credit reporting agencies as to the FirstBank In Personam Claim pursuant to 15 U.SC. §1681s-2(b)(1)(E).

129.    Planet refused to comply with 15 U.SC. §1681s-2(b)(1)(A) and conduct a reasonable investigation; refused to comply with 15 U.SC. §1681s-2(b)(1)(B) and review all relevant information; and refused to comply with 15 U.SC. §1681s-2(b)(1)(E) and delete or modify the item relating to the Consumer Debt being reported to the credit reporting agencies.

130.    After the several disputes by Plaintiffs to different credit reporting agencies, Planet continued to report and furnish incorrect and inaccurate information despite actual knowledge that no amounts on the FirstBank In Personam Claim were due or owing because the FirstBank In Personam Claim was a "in personam" obligation discharged via the Order of Discharge.

131.    In fact, on January 6, 2022, according to an Equifax credit report, Planet reported the FirstBank In Personam Claim with a balance of $207,996; Amount Past Due of $61,325, Schdule Payment of $850.00, and a Status of "Over 120 Days Past Due."

132.    Similarly, on March 4, 2022, according to an Experian credit report, Planet reported the FirstBank In Personam Claim with a balance of $208,642; Amount Past Due of $62,179; a Balloon Payment of $1,780.00, and an account status as "past due as of Feb 2022."

133.    Planet violated 15 U.S.C. § 1681s-2(b) because it failed to conduct an investigation, review all relevant information provided by the Plaintiffs and the credit reporting agencies, and/or report to the credit reporting agencies accurate information with respect to the FirstBank In Personam Claim.

134.    As a result of Planet's violation of the FCRA, the FirstBank In Personam Claim continues to be reported on Plaintiffs' credit reports with a balance more than $207,000.00 as due and owing.

135.    As a result of Planet's violation of the FCRA, the FirstBank In Personam Claim continues to be reported on Plaintiffs' credit reports resulting in a reduction of at least 152 points in the credit score of Plaintiff Ruiz DePorra and a reduction of no less than 47 point in the credit score of Defendant Ortiz.

136.    As a result of Planet's violation of the FCRA, and the resulting reduction in Plaintiffs credit scores, on/or about December 20, 2021, Plaintiffs spoke over the phone with Maritage Homes in Orlando; there, it was concluded that – due to their credit – Plaintiffs could not proceed with the purchase of their home.

137.    As a result of Planet's violation of the FCRA, and the resulting reduction in Plaintiffs credit scores, on/or about December 23, 2021, Plaintiffs spoke over the phone with M/I Homes in Orlando; there, it was concluded that – due to their credit – Plaintiffs could not proceed with the purchase of their home.

138.    Defendant's actions were willful under 15 U.S.C. §§ 1681n because Planet, despite being aware of its obligation under the FCRA to conduct a reasonable investigation, review all relevant information, and delete or modify the inaccurate information, intentionally and for the purpose of coercing the Plaintiff into making payments on the FirstBank In Personam Claim, failed to do so.

139.    The foregoing acts and omissions constitute numerous and multiple willful, reckless, or negligent violations of the FCRA, including but not limited to each one of the above-cited provisions of the FCRA, 15 U.S.C. §1681.

140.    As a direct and proximate result of Planet's willful violation of the FCRA, Plaintiff are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(1); statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendant.

141.    Alternatively, as a direct and proximate result of Planet's negligent noncompliance of the FCRA, Plaintiffs are entitled to actual damages as the Court may allow pursuant to 15 U.S.C. § 1681o(a)(1); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2) from Defendant.

## IX.    COUNT V – VIOLATIONS OF THE DISCHARGE INJUNCTION AND CIVIL CONTEMPT - FIRSTBANK

142.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

143.    11 U.S.C. § 524(a)(2) provides that:

> [A discharge in a case under this title—] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

144.    <u>In Taggart v. Lorenzen</u>, the Supreme Court entered a unanimous opinion as to the legal standard for holding a creditor in civil contempt when it violated a discharge order. Specifically, the Supreme Court ruled that "a court may hold a creditor in civil contempt for violating a discharge order if there is not a fair ground of doubt as to whether the creditor's conduct might be lawful under the discharge order". <u>Taggart v. Lorenzen</u>, 139 S. Ct. 1795 (2019).

145.    Notwithstanding actual and constructive notice of the Discharge Order, Firstbank acted in defiance of the Discharge Order by continuing its collection efforts against Plaintiffs over the FirstBank In Personam Claim.

146.    The Discharge Order Notice mailed to all creditors, including Firstbank, included the following warning: "**This order means that no one may make any attempt to collect a discharged debt from the debtors personally**. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. **Creditors who violate this order can be required to pay debtors damages and attorney's fees**". *(Our Emphasis Added).*

147.    Amongst others, but more specifically, after the Discharge Order, and notwithstanding actual and constructive notice of the Discharge Order, Firstbank continued its collection efforts against Plaintiffs by selling the "in personam debt," a debt which had been discharged, to Planet.

148.    FirstBank knew that the "in personam debt" – or the debt which underlied the promissory note, had been discharged and thus was not collectable from the Plaintiffs. Yet, in open contempt of the law, and of the Bankruptcy Court's Discharge Order, FirstBank placed the

discharged promissory note into the stream of commerce to be sold and acquired by the secondary market.

149.    FirstBank knew or should have known, that such actions would expose the Plaintiffs to collection actions by parties acquiring the discharged promissory note from FirstBank under the false pretense that such promissory note was collectable

150.    The Bankruptcy Debt that was sold to Planet was the personal obligation **("in personam")** between Plaintiff and Firstbank which was discharged by the Discharge Order of the Bankruptcy Court.

151.    FirstBank is well aware that placing these discharged promissory notes into the stream of commerce – after the personal obligations on such notes have been discharged, violates the Discharge Injunction because FirstBank has actively litigated and lost identical cases in this District.

152.    For example, Bankruptcy Courts from this District, with respect to the selling of in personam obligations which have been discharged by a Discharge Order – in a case involving FirstBank - held that "[i]f a creditor were permitted to sell its discharged debts to a third party it would be tantamount to indirectly circumventing the discharge injunction pursuant to 11 U.S.C. § 524(a)." *See*, In re Laboy Adv. No. 09-00047 (Bankr. D.P.R. Feb. 2, 2010).

153.    Firstbank has a history of selling debts in personam obligations which have been previously discharged in a bankruptcy proceeding, in violations of the discharge injunction pursuant to 11 U.S.C. § 524(a). *See*, In re Laboy, Adv. No. 09-00047 (Bankr. D.P.R. Feb. 2, 2010).

154.    Firstbank's pattern and practice of continuing to profit, from the selling of in personam obligations previously discharged by a Bankruptcy Court Discharge Order, is part of its business model to maximize profits at the expense of the Debtor's right to a fresh start.

155.    Because Defendant had actual and constructive knowledge of the bankruptcy petition, because Defendants had actual and constructive knowledge of the Discharge Order, because Defendant had actual and constructive knowledge that a Bankruptcy Court in this District has previously held that the selling in personam obligation of a discharged debt violates the Discharge Order – because Defendant here is the same party as Defendant in In re: Laboy, *supra* - Defendant acted in defiance with premeditation, willfulness, and malice with respect to the Discharge Order. These acts, after the Discharge Order was issued, constitutes an outrageous disregard to Plaintiffs' "fresh start;" which is the basic promise of the Bankruptcy Code to an honest but unfortunate Debtor who achieves an Order of Discharge under the provision of the Bankruptcy Code. The actions perpetrated by the Defendant, its employee(s), agent(s), representative(s), legal or otherwise, are clear and willful violation of Bankruptcy Law and the Discharge Order issued by the Bankruptcy Court.

156.    Firstbank's conduct in this case has gravely frustrated the Discharge Order entered by this Court and has caused the Plaintiffs unwarranted and unnecessary losses of time, efforts and expenses in seeking to enforce the "fresh start" rights guaranteed by the Bankruptcy Code.

157.    As a direct and proximate cause of the aforementioned acts perpetrated by Defendant, its employee(s), agent(s), representative(s), legal or otherwise, and/or contractor (s), in a willful, intentional, deliberate and unlawful conduct in regards with the Discharge Order the Plaintiff has suffered damages in the form of tension, headaches, chest pain, shortness of breath, anxiety, upset stomach, severe emotional suffering, mental anguish and other physical and psychological injuries all caused by the deliberate disruption of Plaintiffs' financial rehabilitation efforts.

158.    As a result of Firstbank's conduct, Plaintiffs are entitled to an award of actual damages, including physical damages, economic losses, emotional suffering, mental anguish and the deliberate disruption of Plaintiffs' financial rehabilitation efforts. At this time, the Plaintiffs cannot fully ascertain the amount of damages they have suffered due to the afore-stated acts, but reasonably estimates their damages in the amount of $100,000.00 per Plaintiff in this Action.

159.    Firstbank's intentional and deliberate actions were intentional or, at a minimum, in reckless disregard of the Honorable Bankruptcy Court's orders, namely the Discharge Order, for which punitive damages are warrant. At this time, the Plaintiffs cannot fully ascertain the amount of punitive damages the Court should impose on the Defendant, but reasonably estimates that the Plaintiffs should be awarded an amount $100,000.00, per Plaintiff in this Action.

160.    In addition, Defendant Firstbank is responsible for Plaintiffs' attorney fees, costs, and expenses.

### COUNT VI – VIOLATIONS OF THE DISCHARGE INJUNCTION AND CIVIL CONTEMPT – PLANET AND LUNA

161.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

162.    11 U.S.C. § 524(a)(2) provides that:

> [A discharge in a case under this title—] operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

163.    In Taggart v. Lorenzen, the Supreme Court entered a unanimous opinion as to the legal standard for holding a creditor in civil contempt when it violated a discharge order. Specifically, the Supreme Court ruled that "a court may hold a creditor in civil contempt for violating a discharge order if there is not a fair ground of doubt as to whether the creditor's conduct might be lawful under the discharge order". Taggart v. Lorenzen, 139 S. Ct. 1795 (2019).

164.    Notwithstanding actual and constructive notice of the Discharge Order, Defendant Planet and Defendant Luna acted in defiance of the Discharge Order by continuing its collection efforts against Plaintiffs as to the FirstBank In Personam Claim.

165.    The Discharge Order Notice mailed to all creditors, including Firstbank – Defendant Planet and Defendant Luna's predecessor in interest - included the following warning: **"This order means that no one may make any attempt to collect a discharged debt from the debtors personally**. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. **Creditors who violate this order can be required to pay debtors damages and attorney's fees**". *(Our Emphasis Added).*

166.    Upon information and belief, upon the purchase of the FirstBank In Personam Claim from FirstBank – as a result of its due diligence – Defendant Luna knew or should have known that the FirstBank In Personam Claim was discharged in the Bankruptcy Case.

167.    Upon information and believe, upon being retained by Defendant Luna to undertake the servicing duties (i.e., to collect) on the FirstBank In Personam Claim – as a result of its due diligence – Defendant Planet knew or should have known that the FirstBank In Personam Claim was discharged in the Bankruptcy Case.

168.    Defendant Planet was again placed on actual knowledge of the Discharge Order and the fact that the FirstBank In Personam Claim had been discharged when they were so informed by Plaintiffs on October 14, 2021, on February 1, 2022, and/or March 16, 2022.

169.     In open contempt of the law and this Honorable Court's Discharge Order, sometime after the Discharge Order entered on December 20, 2016, Defendant Luna and Defendant Planet continued with collection efforts against Plaintiffs as to the FirstBank In Personam Claim.

170.     Amongst others, Defendant Luna hired Defendant Planet to collect on a discharged debt.

171.     Amounts others, Defendant Planet called and contacted Plaintiffs, over various months, to collect on the discharge debt.

172.     Amongst others, Defendant Plane reported false information to the credit reporting agencies, to pressure the Plaintiffs onto making payment on the discharged debt.

173.     Because Defendants had actual and constructive knowledge of the bankruptcy petition, because Defendants had actual and constructive knowledge of the Discharge Order, Defendants acted in defiance with premeditation, willfulness, and malice with respect to the Discharge Order. These acts, after the Discharge Order was issued, constitutes an outrageous disregard to Plaintiffs' "fresh start;" which is the basic promise of the Bankruptcy Code to an honest but unfortunate Debtor who achieves an Order of Discharge under the provision of the Bankruptcy Code. The actions perpetrated by the Defendants, its employee(s), agent(s), representative(s), legal or otherwise, are clear and willful violation of Bankruptcy Law and the Discharge Order issued by the Bankruptcy Court.

174.     Defendant's conduct in this case has gravely frustrated the Discharge Order entered by the Bankruptcy Court and has caused the Plaintiffs unwarranted and unnecessary losses of time, efforts and expenses in seeking to enforce the "fresh start" rights guaranteed by the Bankruptcy Code.

175.    Defendant's behavior after the Discharge Order went into effect has been intentional, egregious and extreme.

176.    The aforementioned acts perpetrated by Defendants caused the Plaintiffs to lose tens of thousands of dollars by not being able to buy a home when interest rates were as low as 2.00% and now have to purchase a home at interest rates closer to 6.00% to 7.00%.  Such difference, which results in at least $10,000.00 in damages in a single year, would amount to no less than $50,000.00 in damages over five (5) years.

177.    As a direct and proximate cause of the aforementioned acts perpetrated by Defendant, its employee(s), agent(s), representative(s), legal or otherwise, and/or contractor (s), in a willful, intentional, deliberate and unlawful conduct in regards with the Discharge Order the Plaintiff has suffered economic damages, as stated supra, and physical and emotional damages in the form of tension, headaches, chest pain, shortness of breath, anxiety, upset stomach, severe emotional suffering, mental anguish and other physical and psychological injuries all caused by the deliberate disruption of Plaintiffs' financial rehabilitation efforts.

178.    As a result of Defendant's conduct, Plaintiffs are entitled to an award of actual damages, including physical damages, economic losses, emotional suffering, mental anguish and the deliberate disruption of Plaintiffs' financial rehabilitation efforts. At this time, the Plaintiffs cannot fully ascertain the amount of damages they have suffered due to the afore-stated acts, but reasonably estimates their damages in the amount of $50,000.00 per Plaintiff in this Action.

179.    Defendant's intentional and deliberate actions were intentional or, at a minimum, in reckless disregard of the Honorable Bankruptcy Court's orders, namely the Discharge Order, for which punitive damages are warrant. At this time, the Plaintiffs cannot fully ascertain the amount

of punitive damages the Court should impose on the Defendant, but reasonably estimates that the Plaintiffs should be awarded an amount $50,000.00, per Plaintiff in this Action.

180.    In addition, Defendants are responsible for Plaintiffs' attorney fees, costs, and expenses.

**WHEREFORE**, in view of the foregoing, Plaintiff respectfully requests from this Honorable Court to enter a Judgment in Plaintiff's favor, granting Plaintiff the remedies requested in this Complaint and such other remedies as may be fair and equitable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 15th day of September 2022.

**THE BATISTA LAW GROUP, PSC.**
P.O. Box 191059
San Juan, PR. 00919
Telephone: (787) 620-2856
Facsimile: (787) 777-1589

/s/ Jesus E. Batista Sánchez
Jesus E. Batista Sánchez, Esq.
USDC-PR No. 227014
E-mail:  jeb@batistasanchez.com

/s/ William Rivera Vélez
William Rivera Vélez, Esq.
USDC-PR No. 229408
E-mail:  wrv@batistasanchez.com

/s/ Carlos A. Ortiz Morales
Carlos A. Ortiz Morales, Esq.
USDC-PR No. 120402
E-mail: comlaw@gmail.com